

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed March 01, 2013**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERICAN HOUSING FOUNDATION, | § | Case No. 09-20232-RLJ-11 |
| | § | |
| Debtor. | § | |
| WALTER O'CHESKEY, Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 11-02132 |
| | § | |
| CATHERINE D. KOEHLER, *et al.* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

In the above styled adversary proceeding, defendants Banjo, Inc., Burgess Trust #4, Carson Burgess, Inc., Carson Herring Burgess, Dennis Dougherty, Charlotte Burgess Griffiths, Heron Land Company, Herring Bank, Jessie Herring Johnson Estate #1, Jessie Herring Johnson Estate #2, Paul King, Cornelia J. Slemp Trust, Clay Storseth, Don Storseth, Individually and as

Trustee of the Storseth Family Trust, Robert L. Templeton, Individually and as Executor of the Estate of Frances Maddox, Louise Johnson Thomas Trust, and Vaudrey Capital, LP (a/k/a Vaudry Capital, L.P.) (collectively referred to as the "Burgess Group Defendants") have made demand for a jury trial [Docket No. 116, p. 17]. They claim that though they have filed proofs of claims, none of such claims concern the underlying transactions involved in this proceeding. Accordingly, they assert that they have a Seventh Amendment right to a jury trial. The plaintiff, Walter O'Cheskey, the trustee of the AHF Liquidating Trust ("Trustee") for the debtor American Housing Foundation ("AHF"), disputes the jury right.

## Background

According to the Trustee's first amended complaint [Docket No. 4], Rainier American Investors I, II, & III (collectively, "Rainier") loaned approximately $14.4 million to AHF-RCL I, AHF-RCL II, and AHF-RCL, III ("RCL Entities"). The loans to the RCL Entities were guaranteed by AHF. The RCL Entities purchased a 99% interest in a limited partnership, GOZ No. 2, Ltd. ("GOZ No. 2"), from the following four trusts: the Schooler Trust, the Conley Trust, the Graham Trust, and the Koehler Trust (collectively, the "Koehler Parties' Trusts"). Steve Sterquell, acting on behalf of AHF, paid the Koehler Parties' Trusts $10.75 million for the interests, though the actual purchase price was to be $11,237,500. At the time the GOZ No. 2 interest was purchased, the Trustee claims it (GOZ No.2) had no assets and therefore the RCL Entities (and AHF) received no value from the Koehler Parties' Trusts. Additionally, after the transfer was made, the Koehler Parties' Trusts received K-1s for charitable deductions from GOZ No. 2 in the amount of $13,591,922, though they allegedly no longer owned an interest in GOZ No. 2.

The Burgess Group Defendants, who seek a jury trial in the present adversary, and a few other creditors brought two suits against the Schooler Trust and Conley Trust, asserting that the trusts were liable as guarantors of AHF's alleged debt to them. Settlements were reached in each suit. The Schooler Trust paid $2.1 million and assigned the Schooler Trust's claim against AHF for $2,875,593. The Conley Trust paid a "Creditors Trust" (for the benefit of the Burgess Group Defendants and a few other creditors) $1.4 million dollars and assigned the claims asserted against AHF by the Conley Trust, LKC-TC, LKC-CDK, MKS-CDK, and JRK-CDK. The Conley Trust retained a 20% "override" interest in any net recovery from any of these claims.

The Trustee has alleged that the Koehler Parties' Trusts are initial transferees of fraudulent transfers received as a result of the sale of the partnership interests in GOZ NO. 2 and that the Burgess Group Defendants are immediate or mediate transferees of $3.5 million of those funds. The Trustee seeks the avoidance and recovery of fraudulent and preferential transfers pursuant to 11 U.S.C. §§ 547, 548, and 550.

Many of the defendants in the present adversary filed claims in the bankruptcy case, including Rainier, the Koehler Parties' Trusts, LKC-TC, JRK-CDK, Schooler Properties, MKS-CDK, Catherine Schooler, Catherine Koehler, LKC-CDK, & Christi Cocke Trammell. Though the Burgess Group Defendants acknowledge filing proofs of claims in the main bankruptcy case based on other facts and transactions, they assert that they have not filed proofs of claims regarding the transactions at issue in this adversary. Accordingly, the Burgess Group Defendants claim they have not submitted to the equitable jurisdiction of the Bankruptcy Court regarding this particular adversary and, therefore, are entitled to a jury trial.

The question presented is whether the Burgess Group Defendants have a right to a jury trial when (1) they have filed proofs of claims in the main bankruptcy case based on transactions other than those raised in the present adversary and (2) the Creditors Trust, which benefits the Burgess Group Defendants, owns the proofs of claims for various entities that arise from certain of the transactions at issue in the adversary proceeding.

## Analysis

**A.  Right to a Jury Trial**

The Court must first consider whether a jury demand has been properly made based on the causes of action raised in the adversary proceedings.  *See Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762 (S.D. Tex. 2007).  In *Granfinanciera, S.A. v. Nordberg*, the Supreme Court of the United States held that a defendant in an action seeking to recover money as a result of a fraudulent conveyance was entitled to a jury trial as long as they had not filed a proof of claim. 492 U.S. 33 (1989).  The Supreme Court noted that the Seventh Amendment provides such a right regardless of the fact that Congress designated a fraudulent conveyance action as a "core proceeding" in 28 U.S.C. § 157(b)(2)(H).  *Id*. at 36.  The Seventh Amendment, which preserves the right to a jury trial in suits at common law, requires bankruptcy courts to recognize that right if the person both has a right to a jury trial and has not waived it.  *See* 28 U.S.C. § 157(e); *Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.)*, 260 B.R. 915, 925 (Bankr. N.D. Ga. 2001). *Granfinanciera* made it clear that defendants in fraudulent conveyance actions are entitled to a jury trial, unless they have otherwise waived that right.  492 U.S. 33.  In reaching its conclusion in *Granfinanciera*, the Court noted that both preferential and fraudulent transfer actions were often brought in courts of law, not only courts of equity.  492 U.S. at 43–46.  While the

*Granfinanciera* Court did not expressly extend its holding beyond fraudulent conveyances, the reasoning of the case leads to the conclusion that jury trials may be required in a variety of other actions before bankruptcy courts. In *Langenkamp v. Culp*, the Supreme Court recognized that a *creditor* would have a right to a jury trial on a preference claim if it had not filed a claim against the bankruptcy estate. 498 U.S. 42, 45 (1990).

While a party may have a right to a jury trial, it can waive that right by taking certain actions, such as filing a proof of claim in the bankruptcy, as the Supreme Court noted in both *Granfinanciera* and *Langenkamp*. In *Langenkamp*, the Court specifically held that the defendants there were not entitled to a jury trial on the trustee's preference actions because they had filed claims against the bankruptcy estate, which had the effect of "bringing themselves within the equitable jurisdiction of the Bankruptcy Court." *Langenkamp*, 498 U.S. at 45. The Court said that in *Granfinanciera* it recognized that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Id.* (quoting *Granfinanciera*, 492 U.S. at 58–59). The Court went on to say that if the creditor is later faced with a preference action, that action is part of the claims-allowance process, which is tried only in equity. *Id.* The "creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Id*.

Though filing a proof of claim has been considered a waiver of the right to a jury trial in both fraudulent conveyance and preference actions, in arguing before the Court, the Burgess Group Defendants asserted that this general rule does not apply to them under the current facts, though they readily acknowledge that they have filed proofs of claims in the AHF bankruptcy

case. The Burgess Group Defendants specifically point to *Germain v. Connecticut National Bank*, 988 F.2d 1323 (2nd Cir. 1993), and *In re Com 21*, No. C-04-03396, 2005 WL 1606357 (N.D. Cal. July 6, 2005). In *Germain*, the Second Circuit expounded on the holdings of Supreme Court precedent in finding that while a proof of claim was a necessary condition of waiver of the right to a jury trial, it was not sufficient alone to waive such right. 988 F.2d at 1328. The court said:

> The very phrase "claims-allowance process" suggests that the resolution of the dispute in which a jury trial is sought must affect the allowance of the creditor's claim in order to be part of that process. A preference action does so; lender liability actions generally do not. Therefore, suits like [this action] which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process.

*Id*. The court noted that when a creditor submits to the equitable jurisdiction of the bankruptcy court, it waives any jury trial right in the resolution of disputes "vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy." *Id*. at 1329–30. Following the *Germain* case, the Northern District of California stated that the right to a jury trial on legal claims arising in adversary proceedings depended on "(1) whether the creditor has filed a proof of claim against the bankruptcy estate; and (2) whether the resolution of the proceeding affects the allowance of the proof of claim." *In re Com 21*, 2005 WL 1606357, at *9 (internal citation omitted). A Northern District of Texas case has also cited *Germain* favorably for the proposition that "the mere fact that the outcome of a dispute could have the effect of enlarging the estate does not mean that the dispute will have any effect on the allowance of a disputant's claims in bankruptcy." *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) (McBryde, J.).

### B. Application

Upon a cursory review, it would appear that the Burgess Group Defendants do not have a right to a jury trial because they filed proofs of claims against AHF. However, as discussed above, they assert that their proofs of claims are not related to any of the RCL Entities' transactions and that their filing of proofs of claims should not, therefore, serve as a waiver of their right to a jury trial in this proceeding. The Trustee, meanwhile, asserts that the Burgess Group Defendants have waived their right to a jury trial and that their proofs of claims are indeed affected by the outcome of the adversary proceeding. Specifically, the Trustee submits that the defendants in question will get to keep the $3.5 million if the Trustee does not win, but their proofs of claims would increase if the Trustee wins and to the extent he recovers transfers made to the defendants. Going a step further, the Trustee also asserts that when the Burgess Group Defendants entered into a settlement with the Conley and Schooler Trusts, they stepped into the shoes of those parties. While the assigned claims are technically held in trust, they are held for the benefit of the Burgess Group Defendants, among others. The Trustee alleges that, as a result, the Burgess Group Defendants have two sets of claims to be considered in determining if waiver of the right to a jury trial has occurred: (1) their own individual proofs of claims; and (2) a portion of the Koehler-related claims that were negotiated for and now partially owned by the group as a result of the settlements.

While the types of actions brought by the Trustee are of such a nature that they give rise to a right to a jury trial under the Seventh Amendment, the Burgess Group Defendants have waived such right by filing their proofs of claims. The holdings of *Granfinanciera* and

*Langenkamp* make clear that defendants in fraudulent and preferential transfer actions are generally not entitled to a jury trial if they are claims-filing creditors in the bankruptcy case, as are the Burgess Group Defendants here. Even considering the holdings in *Germain* and *In re Com 21*, the Burgess Group Defendants fail to show that they have *not* waived their right to a jury trial. *Germain* involved the trustee bringing claims for tortious interference with the debtor's business, coercion and duress, breach of the contractual duty of good faith, unfair or deceptive business practices, and misrepresentations, while *In re Com 21* involved the trustee asserting a legal malpractice action on behalf of the debtor. Neither case involved allegations of fraudulent or preferential transfers.

Further, the court in *Germain* specifically acknowledged that when a creditor submits to the equitable jurisdiction of the court, it waives any jury trial right in the resolution of disputes "vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy." 988 F.2d at 1329–30. In filing proofs of claims against AHF, the Burgess Group Defendants have submitted to the equitable jurisdiction of the court. The actions in this adversary proceeding are of such a nature that they are a vital part of the bankruptcy process and directly affect the claims allowance process, including the treatment of the Burgess Group Defendants' proofs of claims. If the transfers are found to be fraudulent or preferential transfers, the Burgess Group Defendants may be required to pay the $3.5 million they received back to the AHF bankruptcy estate. This could in turn result in the parties seeking to amend their proofs of claims to increase the amount that they allege they are owed. Similarly, if the Trustee loses its case, the Burgess Group Defendants would retain the monies received, which are noted as credits on their proofs of claims. *See, i.e.*, Banjo, Inc.'s

Addendum to Amended Proof of Claim, Claim No. 116-2, p.3 (citing a credit in the amount of $12,975.00 from the Schooler Trust settlement).

### Conclusion

Because the Burgess Group Defendants have filed proofs of claims, thereby submitting to the equitable jurisdiction of the bankruptcy court, and the actions in the present adversary affect the claims allowance process as to those proofs of claims, they have waived their right to a jury trial in this adversary. The request for a jury trial will be denied.

### End of Memorandum Opinion ###